
U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

09 JUL 27 A10:41
JON W. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            Case No. 09-CR-154

PETER KNEBEL,

        Defendant.

---

## PLEA AGREEMENT

---

1. The United States of America, by its attorneys, Michelle L. Jacobs, Acting United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs, Assistant United States Attorney, and the defendant, Peter Knebel, individually and by attorney William J. Reddin, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a one-count indictment returned in the Eastern District of Missouri on June 3, 2009. This indictment charges the defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.

3. The defendant has read and fully understands the charge contained in the indictment and fully understands the nature and elements of the crime with which he has

been charged and that charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees, pursuant to Rule 20(a) of the Federal Rules of Criminal Procedure, to the transfer of the prosecution from the Eastern District of Missouri to the Eastern District of Wisconsin, and to plead guilty to the charge contained in of the indictment pending against him in the Eastern District of Missouri, which is set forth below.

The Grand Jury charges that:

1. At all times relative to this indictment, defendant Peter Knebel was employed at Office Furniture Resources, Milwaukee, Wisconsin.

2. Office Furniture Resources bought and sold office furniture as well as installing and setting up furniture at businesses around the Midwest.

3. At all times relative to this indictment, defendant Craig Jacob was employed at CJ's Delivery and More, Inc., St. Louis, Missouri.

4. CJ's Delivery and More, Inc. delivered office furniture and equipment and, at times, assisted in the setting up of furniture at businesses in the St. Louis, Missouri area.

5. During this time, Centene Corporation, Clayton, Missouri was a client of Office Furniture Resources and CJ's Delivery and More, Inc.

6. From time to time, Centene would purchase office furniture and equipment as well as delivery and set up services from Office Furniture Resources and CJ's Delivery and More, Inc.

7. Office Furniture Resources would bid a job for Centene including furniture, the furniture design, and set up for Centene office space.

2

8. In collusion with Craig Jacob of CJ's Delivery and More, Inc. and Peter Knebel of Office Furniture Resources would falsely and fraudulently inflate the invoices for man hours needed to deliver and set up office furniture and equipment at Centene.

9. Knebel and Jacob would then split the inflated amount between them unbeknownst to Centene.

10. During January 2007 and October 2008, Knebel received approximately $44,400.00 from Jacob. Jacob kept the remainder of the inflated amount due to over billing Centene which was approximately the same received by Knebel.

11. At all times during this indictment, defendants Peter Knebel and Craig Jacob generally used and caused to be used the U.S. mail.

12. On or about May 28, 2008, in St. Louis County, in the Eastern District of Missouri,

**JAMES [sic] KNEBEL and
CRAIG JACOB**

the defendants herein, having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises and for the purpose of executing such scheme and artifice and attempting to do so, did cause to be placed in the U.S. mail check #5201, drawn on CJ's Delivery and More, Inc. account, in the amount of $12,000.00, payable to Peter Knebel, 1900 Cliff Alex Court, Waukesha, Wisconsin 53189, both defendants knowing said check represented falsely and fraudulently inflated billing proceeds from Centene Corporation through the above-described scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

In violation of Title 18, United States Code, Sections 2 and 1341.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense charged in the indictment pending against him in the Eastern District of Missouri. The parties acknowledge and understand that, if this case were to proceed to trial,

3

the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

At all times relevant, defendant Peter Knebel was a resident of Waukesha, Wisconsin and was employed at Office Furniture Resources, Inc., which is located in Milwaukee. Office Furniture Resources bought and sold office furniture as well as installing and setting up furniture at businesses around the Midwest. Craig Jacob was employed at CJ's Delivery and More, which is located in St. Louis, Missouri. CJ's Delivery and More delivered office furniture and equipment sold by Office Furniture Resources and, at times, assisted in the setting up of furniture at businesses in the St. Louis area.

Centene Corporation, which is located in Clayton, Missouri was a customer and/or client of Office Furniture Resources and CJ's Delivery and More. Centene purchased office furniture and equipment as well as delivery and set up services from Office Furniture Resources and CJ's Delivery and More.

Beginning in approximately January 2007 and continuing until approximately October 2008, Knebel and Jacob devised and carried out a scheme to defraud Centene. As part of this scheme, Knebel, on behalf of Office Furniture Resources, would submit bids to Centene in which Knebel

4

had fraudulently inflated the man hours needed to deliver and set up office furniture sold by Office Furniture Resources and delivered and installed by CJ's Delivery and More. After Centene paid these inflated invoices, Knebel and Jacob would split the inflated amounts between themselves.

As a result of this scheme, Knebel fraudulently received approximately $44,400. Jacob and Knebel used the U.S. mail to carry out their scheme. In particular, on or about May 28, 2008, Jacob mailed to Knebel a check drawn on CJ's Delivery and More's bank account in the amount of $12,000 payable to Knebel. The check was mailed from St. Louis, Missouri to Knebel at his residence in Waukesha, Wisconsin. The check represented Knebel's share of the proceeds fraudulently obtained from Centene based on the submission of inflated invoices.

This information is provided for the purpose of setting forth a factual basis for the defendant's plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum terms of imprisonment and fines: Twenty (20) and $250,000. This charge also carries a mandatory special assessment of $100.00 and a maximum of three years of supervised release to follow any term of confinement. The parties further recognize that a restitution order may be entered by the

5

court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 26 of this agreement.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes, as well as the applicable sentencing guidelines, with his attorney.

## ELEMENTS

8. The parties understand and agree that in order to sustain the charge of mail fraud, in violation of 18 U.S.C. § 1341, as charged in the indictment, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant knowingly devised or participated in a scheme to defraud or to obtain money by means of material false pretenses or representations, as described in the indictment;
>
> Second, that the defendant did so knowingly and with the intent to defraud; and
>
> Third, that for the purpose of carrying out the scheme or attempting to do so, the defendant used or caused the use of the U.S. mail in the manner charged.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

6

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions that they believe to be applicable to the offense to which the defendant will plead guilty. The defendant acknowledges and agrees that his attorney, in turn, has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12. The parties acknowledge and understand that, prior to sentencing, the United States Probation Office will conduct its own investigation of the defendant's criminal history for purposes of assisting the sentencing court in determining the defendant's criminal history category under the sentencing guidelines. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty plea solely as a result of the sentencing court's determination of defendant's criminal history category.

## **Relevant Conduct**

13. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge will consider relevant conduct in

7

calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty.

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing court will consider the total amount of the loss incurred by the victim as a result of the defendant's fraud even if not alleged in the offense of conviction, and will use the total amount in calculating the sentencing guidelines range.

15. For purposes of determining the defendant's offense level under the sentencing guidelines, the defendant and his attorney acknowledge that the loss amount associated with the defendant's criminal conduct is more than $70,000 but less than $120,000. The parties acknowledge and understand that the amount of loss may differ from the amount of restitution imposed by the sentencing court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 26 of this agreement.

## Sentencing Guidelines Calculations

16. The parties acknowledge, understand, and agree that the sentencing guidelines recommendations included in this agreement represent the positions of the parties on the factors to be considered in calculating the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculation of the

8

appropriate adjusted offense level, the government is not bound to make the recommendations contained in this agreement.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offenses to which the defendant will plead guilty is 7, as determined under Sentencing Guidelines Manual § 2B1.1(a).

## Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that the defendant's base offense level should be increased 8 levels under Sentencing Guidelines Manual § 2B1.1(b)(1)(E) because the loss amount associated with the defendant's fraud is more than $70,000 but less than $120,000.

## Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Sentencing Recommendations

20. Both parties reserve the right to apprise the district court and the probation office of any and all information that might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offenses, as well as any and all matters that might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding the fine to be imposed and any other matters not specifically addressed by this agreement.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The parties further understand that the United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the application of the sentencing guidelines and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty pleas solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

### Special Assessment

25. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

26. The defendant agrees to make restitution to the victim of his fraud, Centene Corporation, St. Louis, Missouri, in the amount of $44,400. The defendant understands that because restitution for the offense to which the defendant will guilty is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S COOPERATION

27. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand, and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, only the government, in its discretion, may move for and recommend a downward departure from the applicable sentencing guidelines range. The defendant acknowledges and understands that the court will make its own determination with regard to the appropriateness and extent of a downward departure.

11

## DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charge against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could

12

be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

30. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

32. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and

13

opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of his conviction.

### Further Action by Internal Revenue Service

36. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charge alleged in the indictment.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's

agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

38. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7-14-09

PETER KNEBEL
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/14/09

WILLIAM J. REDDIN
Attorney for Defendant

For the United States of America:

Date: 7/27/09

MICHELLE L. JACOBS
Acting United States Attorney

Date: 7/27/09

MATTHEW L. JACOBS
Assistant United States Attorney

16